OPINION
Defendant-appellant, Michael Edward Jackson, appeals his conviction in the Youngstown Municipal Court on a single count of assault, a violation of R.C. 2903.13 (A).
On July 31, 1997 at the Mahoning County Jail, in Youngstown, Ohio, appellant, who was working as a corrections officer, was involved in a fight with inmate Paul Brown. Brown testified that he was talking on the phone at approximately 9:15 or 9:20 p.m. Appellant told him to get off the phone and subsequently turned it off while Brown was talking. Inmate Jerome Gibson testified that the deputies put the inmates in lockdown at 9:30 p.m. Brown testified that appellant began swearing at him, and told him he would "kick [his] butt." Appellant then opened Brown's cell door, and called for assistance. Other deputies arrived and appellant told Brown, "[t]alk that shit you was talkin'." Appellant then punched Brown in the face and a fight ensued. Deputy Belosic tried to restrain appellant while Deputy Smith restrained Brown on his bed with his hands pinned behind his back. Appellant punched and kicked Brown four times while Smith had Brown restrained. Deputy Smith also testified that appellant hit Brown first, and hit him again while restrained.
Appellant testified that he ordered Brown off the phone at 9:30 p.m., lockdown time, but that Brown did not listen. Appellant then shut the phone off at 9:35 p.m. Brown began to swear at appellant and took his shirt off. According to appellant, when an inmate takes his shirt off, it is a sign he is getting ready to fight. Appellant tried to put his hand on Brown but Brown pushed it off. Appellant claims to have observed Brown in the past kicking another inmate, and knew that Brown had been in one other fight. According to appellant, Brown assumed a "fighting stance" and balled his fists, leading appellant to believe Brown was going to hit him. Appellant stated that Brown "flexed his arm, as if he was going to throw a sucker punch." Appellant testified that he was scared and "swung to hit [Brown]."
Deputies May and Harris both testified that Brown and appellant were arguing and that Brown had taken up a "fighting stance." In addition, Deputy Constantino testified that he had taken Brown's written statement and that Brown read it over before he signed it. The statement made no mention of appellant "hitting Brown four times while Brown was restrained.
A complaint was filed on August 6, 1997 charging appellant with assault, in violation of R.C. 2903.13 (A), a first degree misdemeanor. Appellant filed a written plea of not guilty on August 7, 1997. A bench trial commenced on October 1, 1997 and Judge Patrick Kerrigan entered a judgment of guilty on October 2, 1997. Appellant was sentenced to sixty days in jail, with sixty days suspended; sixty days house arrest in lieu of jail; a fine of $1,000 and costs, of which $900 was suspended; and six months probation.
Appellant filed a Motion to Stay Sentence Pending Appeal with the trial court on October 30, 1997, and on the same day filed a timely Notice of Appeal. Judge Kerrigan granted appellant a stay of execution.
Appellant's sole assignment of error states:
 "THE VERDICT OF THE COURT BELOW WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that due to the circumstances leading up to the fight, he was justified in using force. Appellant claims that Brown disobeyed his order to get off the phone and that appellant was aware of two other altercations in which Brown was involved.
In addition appellant notes that Brown took off his shirt and put his arms up in a "fighting stance," while numerous inmates were near by. Because of these circumstances, appellant believes that the evidence showed he had reason to use force against Brown.
Appellant argues that reasonable minds could reach the conclusion that Brown wanted to fight. As such, appellant claims he was entitled to punch Brown. Appellant relies on a Fourth District Court of Appeals case which stated, "[t]o establish self-defense in a nondeadly-force case, one may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend." City of Chillicothe v. Knight
(1992), 75 Ohio App.3d 544, 550. Appellant argues that he had to punch Brown because he thought that Brown might punch him.
In response, plaintiff-appellee, the State of Ohio, argues that the trial court's decision was not against the manifest weight of the evidence. Appellant caused physical harm to Brown, by punching him in the face more than once. According to appellee, Brown's physical injuries were demonstrated by photographs of Brown taken shortly after the incident and by the testimony of several witnesses.
Appellee argues that there is nothing to indicate that the trial court lost its way and created a manifest miscarriage of justice. As support for this contention, appellee cites to the trial transcript wherein the trial court stated:
 "I HAVE NO DOUBT THAT PAUL BROWN WANTED TO FIGHT, WAS INSTIGATING, MAY HAVE TAKEN HIS SHIRT OFF AND PUT HIS SHOES ON AND DONE ALL THOSE THINGS, BUT I THINK PROBABLY THE MOST CRITICAL POINT * * * THE TWO CRITICAL POINTS THAT ARE HERE — AND THAT NEW PHRASE, THIS REACTIONARY GAP, THIS ZONE — YOUR CLIENT VIOLATED THAT TWICE BY HIS OWN ADMISSION, NOT EVEN COUNTING WHAT ANYBODY ELSE SAID.
"* * *
 "IF A FIT OF RAGE PLAYS TO ANYBODY, I THINK UNFORTUNATELY IT WAS YOUR CLIENT [JACKSON], AND FOR WHATEVER REASON, HE DIDN'T WAIT FOR HIS BACKUP. IT WAS ON THE WAY. IT WAS THERE. IF HE HAD WAITED 10 SECONDS, NONE OF THIS WOULD HAVE HAPPENED, BUT THERE IS NO SET OF CIRCUMSTANCES THAT I CAN UNDERSTAND WHERE HE COULD GO AND PUNCH HIM WITHOUT AT LEAST HAVING FISTS THROWN AT HIM, EVEN IF HE WASN'T HIT. WITH FISTS THROWN AT HIM, EVEN THEN THERE ARE MANY WAYS TO SUBDUE SOMEONE.
 "HE DIDN'T EVEN WAIT FOR THAT. HE SAW A FIGHTING STANCE AND HE COLDCOCKED [sic] HIM. THAT'S TOTALLY UNACCEPTABLE." (Tr. 205-206)
According to appellee, this portion of the transcript indicates that the trial court reviewed appellant's "fighting stance" defense and found that it was not a justification for appellant punching Brown. Appellee argues that the "fighting stance" defense was a veiled attempt to argue self-defense, without meeting its burden of proof.
In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.).
In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id., at 390, (Cook, J., concurring). In addition, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2903.13 (A) provides as follows:
 "No person shall knowingly cause or attempt to cause physical harm to another or another's unborn."
In the instant case, we fail to see how appellant's conviction resulted in a manifest miscarriage of justice. Although we recognize the sometimes arduous task of maintaining order within a corrections facility, and the spontaneity with which officers must often make decisions concerning order and safety, the fact remains that under the instant circumstances appellant's response to Brown's actions was inappropriate. Even assuming that Brown took off his shirt and assumed a fighting stance, punching Brown in the face was not an acceptable means of dealing with the situation. This much was confirmed by the testimony of Deputies Harris and May each of whom testified that appellant's actions were in violation of department policy and/or constituted an unreasonable exercise of force.
In addition, appellant's fear of Brown was unreasonable inasmuch as he had backup available. Appellant could have dealt with the situation in other, non-violent, ways. He could have tried to restrain Brown. Had Brown resisted, appellant could have sought the help of the other deputies that arrived. Appellant clearly had other options available but instead chose a violent course of action by punching Brown in the face.
Even if appellant was justified in punching Brown the first time because he feared for his safety, there was no justification for why appellant hit and kicked Brown after he had been restrained. If Brown had been a threat to appellant at first, certainly he was no longer a threat once Deputy Smith pinned him down on the bed.
A case should be reversed only when the evidence weighs heavily against the conviction. Thompkins, supra, at 387. In the instant case the evidence demonstrated beyond a reasonable doubt that appellant knowingly caused physical harm to Brown by initially punching him in the face and then continuing to strike him while he was restrained. Accordingly, appellant's sole assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Cox, J., Vukovich, J., concurs.
APPROVED:
 __________________________________ Gene Donofrio Judge